Smith vs. The State.

SMITH, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 7 — June 1, 1885.*

*Criminal law: Kidnaping: False imprisonment: Intent: Statute construed.*

1. The *intent* mentioned in sec. 4387, R. S., "to cause such person to be secretly confined . . . or to be sent or carried out of this state," etc., is intended to qualify each preceding clause of the section to which it can be made applicable; and such intent must be alleged and proved in order to a conviction under that section.

2. Thus, an information alleging the forcible confinement and imprisonment of a person within this state, against his will, and without lawful authority, but not alleging any specific intent in such confinement, charges merely the common law offense of false imprisonment, punishable under sec. 4635, R. S., and not an offense under sec. 4387, R. S.

ERROR to the Circuit Court for *Sauk* County.

The case is stated in the opinion.

For the plaintiff in error there were briefs by *Brooks & Dutcher*, and oral argument by *Mr. Brooks*. They contended, *inter alia*, that sec. 4387, R. S., was derived from the state of New York, and has been there so construed that to constitute an offense thereunder the act must be committed with the specific intent to do one of the things there enumerated. See 2 R. S. of N. Y. (2d ed.), 553; 3 id. (7th ed.), 2477; *Nash v. Benedict*, 25 Wend. 645; *People v. Merrill*, 2 Parker's Cr. R. 595, 604; *S. C.* 14 N. Y. 75; *Hadden v. People*, 25 id. 373. When a particular intent is essential to constitute a crime that intent must be distinctly alleged in the indictment or information. 1 Whart. Cr. Law, sec. 297; *State v. Card*, 34 N. H. 515; *People v. Lohman*, 2 Barb. 216; *Gabe v. State*, 1 Eng. (Ark.), 519; *Morman v. State*, 24 Miss. 54; *Comm. v. Morse*, 2 Mass. 128; *Comm. v. Slack*, 19 Pick. 304.

For the defendant in error there was a brief signed by the *Attorney General* and *H. W. Chynoweth*, Assistant Attorney General, and the cause was argued orally by *Mr. Chynoweth*.

ORTON, J. The plaintiff in error was tried and found guilty upon the following information: "That on the 25th day of July, in the year 1883, at said county, said *William Smith* did feloniously, unlawfully, maliciously, and wilfully assault one A. B. Ewers, and then and there feloniously, unlawfully, injuriously, wilfully, and without lawful authority, forcibly confine and imprison, against his, the said A. B. Ewers', will, and him, the said A. B. Ewers, then and there feloniously, and without any lawful authority, and against his will, forcibly did convey from Mill Creek, in said county, to Hawthorne's store, in said county, against the peace and dignity of the state of Wisconsin." There

was a motion in arrest, and for a new trial, which was overruled, and thereupon the defendant, the plaintiff in error, was sentenced by the court to imprisonment in the state prison, for a term within the limits prescribed by sec. 4387, R. S. 1878, on which the information was claimed to have been predicated. That section is as follows: "Any person who shall, without lawful authority, forcibly or secretly confine or imprison another within this state, against his will, or who shall forcibly carry or send another out of this state, or from place to place within this state, against his will, and without lawful authority, or who shall, without such authority, forcibly seize, confine, inveigle, or kidnap another, with intent to cause such person to be secretly confined or imprisoned in this state against his will, or to be sent or carried out of this state against his will, or to be sold as a slave, . . . shall be punished by imprisonment in the state prison not more than two years nor less than one year; . . ."

. On the motion in arrest, and on the instructions given by the court to the jury, and certain instructions asked and refused, the question was raised whether the information charged the offense defined in the above section, and this is the only important question presented to this court on the writ of error. It was and is contended by the learned counsel of the plaintiff in error that the information should have charged that the confinement and imprisonment, and the conveying of Ewers from place to place within this state, was "with intent to cause him to be *secretly* confined or imprisoned in this state against his will, or to be sent or carried out of this state against his will, or to be sold as a slave," etc.; and that such *intent* qualifies all of the previous clauses of the section, and should be averred in connection therewith. The learned judge of the circuit court, before whom the cause was tried, held that the first two clauses defined complete and distinct offenses in them-

selves, and that it was not necessary to aver or prove such intent.

The information, after alleging the assault, undertakes to charge the forcible confinement and imprisonment of some one "against his, the said A. B. Ewers', will," but does not state who such person was; but this allegation was treated as having charged the forcible confinement and imprisonment of him, the said A. B. Ewers, and the learned judge said in his charge: " In this case the act is charged as complete, and it is the forcible confinement and imprisonment. It is not doing a thing with intent to accomplish some other thing." The conveyance of the prisoner from place to place within this state, as charged in the information, is ignored in the charge. We shall therefore treat the information as sufficiently alleging the forcible confinement and imprisonment of A. B. Ewers within this state, against his will, and without lawful authority. This clause of the section alone states nothing more than a mere unlawful or false imprisonment. The qualifying words in this information, such as " unlawfully, feloniously, injuriously, or wilfully," are not in the section, and do not qualify the confinement or imprisonment, which has to be only forcible, without lawful authority, and against the will of the prisoner, to constitute the offense, if this clause alone is intended to define an offense.

False imprisonment was indictable at common law, and the indictment charged the accused with having assaulted another, and him then and there unlawfully, injuriously, against his will, and without his consent, and without any legal warrant, authority, or justifiable cause, imprisoned and detained for a long time, (to wit), etc. 1 Chit. Crim. Law, 834. It is an unlawful restraint of one's liberty for which an action could be brought for private damages; and to punish the wrong done to the public, it was also indictable at common law. 4 Bl. Comm. 218. " There

must be an unlawful detention, and such detention will be unlawful unless there be some sufficient authority for it, arising either from some process from the courts of justice, or from some legal warrant of a legal officer having power to commit, or arising from other special cause sanctioned for the necessity of the thing, either by common law or by act of Parliament." 1 Russ. Cr. 1028; 3 Bl. Comm. 127.

If the first clause of the section was intended only to define and constitute the crime of false imprisoment, it certainly has no ingredients which were not always present in false imprisonment at common law, which was both the subject of a civil action and of indictment. Whether false imprisonment is not now indictable as a misdemeanor at common law in this state and other states, depends upon the statutes prescribing or not prescribing the penalty thereof.

The next clause of the section is, " or who shall forcibly carry or send another out of this state, against his will and without lawful authority." Here is something more than mere false imprisonment, and is *kidnaping* fully consummated; and the other clauses following, which imply a false imprisonment with " intent to cause [the prisoner] to be secretly confined or imprisoned in this state against his will, or to be sent or carried out of this state against his will," have all the elements of kidnaping at common law, and perhaps something more. Kidnaping at common law is defined to be " the forcible abduction and conveying away a man, woman, or child from their own country and sending them to another." 2 Toml. Law Dict. 335; 4 Bl. Comm. 219; 1 East, P. C. 430. " It is an aggravated species of false imprisonment." Roscoe, Ev. 465. " The forcible abduction and carrying away of any person by sending him from his own country into some other . . . is properly called kidnaping, and is an offense of an aggravated descrip-

tion." 1 Russ. Cr. 961. "It might well have been substituted upon the roll of capital crimes." 1 East, P. C. 430.

This crime, at common law, was punished with rigorous severity, as being of the most atrocious character. Its punishment, under our statute and the statutes of other states, indicates the high grade of the offense. Here it is imprisonment in the state prison for a term of not less than one year. In Vermont the punishment is three years in state prison. In Illinois, from one to seven years, under a statute substantially like ours, for kidnaping; and for the misdemeanor of false imprisonment, not to exceed $500 fine and imprisonment in county jail not to exceed one year. In Maryland, in state prison from two to ten years. In Iowa, in state prison five years. In Ohio, in state prison from one to seven years. In New Jersey, not to exceed twenty years. In Texas, not to exceed ten years. There is a corresponding punishment for this crime in all the states. Can it be possible that the legislature of this state intended to punish simple false imprisonment the same as this high crime of kidnaping? And yet it must be so, if the first clause of the section defines a distinct and complete offense, unqualified by the intent thereinafter mentioned, which would make the crime kidnaping.

The subsequent provision in the section which makes the offense triable " in any county into which the person so *kidnaped* may be carried or sent," denominates the offense kidnaping. The marginal title of the section in all the revisions of the statute from and including that of 1839 is kidnaping, and by this name it is found in the index. Secreting the prisoner, or carrying him out of the state, or in some way depriving him of the ordinary means of securing his liberty, or, as is said in Russell, *supra*, " depriving him of the friendly assistance of the laws to redeem himself from such his captivity," are the ingredients of the offense.

Smith vs. The State.

The strongest and most plausible argument of the learned assistant attorney general in favor of such a construction of our statute as to make the first clause constitute a distinct offense without the intent mentioned in a subsequent part of the section, is that our statute is the same in substance as the old and present statute of Massachusetts, which, it is claimed, has received such a judicial construction by the highest court of that state, and from which it is assumed that our statute was borrowed. The Massachusetts statute was passed in 1784, and is found in the revisions of 1836, 1860, and 1882, with but very slight change. Michigan enacted substantially the same statute in 1833, or rather it is found in the revision of that year, and may have borrowed it from Massachusetts, and probably did. Our present statute was in the revision of the territory of 1839, and in the revisions of 1849 and 1858, substantially the same as it is now, so far as it relates to this question.

I cannot find that the Massachusetts statute has ever received any construction touching this question by the courts of that state, except, perhaps, in *Comm. v. Nickerson*, 5 Allen, 518, in the year 1862. The first count of the indictment was for an assault and battery, and imprisonment, without lawful authority, and against his will, of one Charles Rice, for the space of two hours. The second count " charged the commission of the *same acts*, with intent and design to send the said Charles, and cause him to be sent, from and out of the limits of the commonwealth." The third count charged that the defendants, at the time and place above named, " fraudulently, wickedly, and without any lawful authority, forcibly seized, confined, inveigled, and kidnaped said Charles with intent to send him, and cause him to be sent, out of the commonwealth, without the consent and against the will of said Charles." The defendants were convicted on all the counts, and the court held that there

was no proof of the intent mentioned in the second and third counts, but that they were properly convicted under the first count. Dewey, J., said in his opinion: "The conviction of the defendants upon the first count of this indictment may be well sustained. The evidence shows an assault upon the person of [Rice], and a restraint of his liberty. Every such restraint of the liberty of a person, if not justified by law, is, in the eye of the law, a false imprisonment, for which the party was liable to an indictment at common law. The like offense is now made punishable by statute." Was this count sustained for a·statutory or common-law offense? It does not appear in the case. It was sufficient that it stated an offense at common law.. The statute was not construed directly, but it was indirectly, by treating the second count of the indictment as properly stating an offense under the statute. That count repeated the first, and then added the *intent*, thus holding that the intent which is subsequently mentioned in the section qualified the acts mentioned in the first clause. That is what the learned counsel of the defendant in this case contends, that such intent qualifies all the clauses of the section defining distinct acts. The punishment affixed to the crime of kidnaping in that state was sufficiently elastic to cover and be suitable to the common-law misdemeanor of false imprisonment, for it might be not exceeding one dollar fine and one day's imprisonment. If that court intended to hold that the first count sufficiently stated the statutory offense, irrespective of the common law, then the decision involves the contradiction and absurdity that the first clause in itself states a distinct and complete offense, without alleging the intent thereafter mentioned, and that such intent qualifies, and was intended to qualify, the first clause in stating and defining the offense. The intent either qualifies the first clause or it does not. If it does, then it is necessary to allege it in all cases, or the offense is not fully

charged. This apparent contradiction is reconciled by assuming (and this is the most reasonable) that the first count was held good because it charged the misdemeanor of false imprisonment at common law, as is so strongly intimated in the above language of the opinion.

The only other case in that state in which the indictment undertook to charge the offense as defined in the first clause of the section, is that of *Comm. v. Blodgett*, 12 Met. 56. The indictment was the same as in *Comm. v. Nickerson, supra*, making another authority in favor of the construction that the intent was made to qualify the first clause as well as the subsequent clauses. This case arose in 1842. The defendants were convicted generally, and the case went up to the supreme judicial court on special exceptions, relating to instructions to the jury of the law applicable to the facts; and no question was raised as to the indictment.

These cases afford no authority in point on the question here raised, but make some weight, as I think, in favor of the construction that requires the intent to be alleged in all cases, to constitute the offense defined by the statute. But if these and other cases had put the construction upon the section contended for by the learned assistant attorney general, they were long subsequent to the adoption of that statute by this state and territory, and would be of no greater authority than similar cases elsewhere. The fact that the legislature of this state has seen fit to vastly increase the minimum punishment of the Massachusetts statute to one year's imprisonment in the state prison, is a strong argument that no lesser crime than kidnaping was intended to be defined by this section.

In *State v. M'Roberts*, 4 Blackf. 178, the indictment was held good, which stated the intent to carry and convey the person out of the state, as alleging kidnaping in the language of the statute. In *Moody v. People*, 20 Ill. 315, the intent to transport out of the state was alleged. In *Click*

*v. State*, 3 Tex. 282, an indictment was sustained which alleged the imprisonment with intent to carry the person out of the state as good at common law, and it was held that such intent must be alleged and proved. That state soon after passed a statute defining the offense in nearly the same language as our statute. The states of Maine, Michigan, New Hampshire, Iowa, Minnesota, and Delaware have nearly the same section in language and the same in substance, and the punishment is always in the state prison for more than one year. In New York false imprisonment by officers is a misdemeanor.

It is contended that the intent cannot be made to qualify all of these clauses without tautology. The indictment or information may charge the forcible imprisonment within this state, with intent to cause such person to be sent or carried out of this state against his will, and without lawful authority; and so the forcible carrying or sending such person from place to place within this state, with the same intent; and, lastly, the seizing, confining, inveigling, or kidnaping with the same intent. These are all the clauses except one, and that is, the forcible carrying or sending another out of this state, without lawful authority, and against his will. This is kidnaping in *fact*, and not in intent merely; or kidnaping fully accomplished; and the intent is implied. The intent must be alleged when it can be and when it is applicable, and need not be when it is clearly inapplicable, as in such a case where the person confined has actually been carried or sent out of the state, and no violence will be done to the language or to the above construction of the section.

The first count of the information in this case clearly charges the common-law misdemeanor of false or unlawful imprisonment. For this misdemeanor at common law no punishment has been prescribed by our statute. The case, therefore, would seem to fall within sec. 4635, R. S., which

prescribes the punishment of any person convicted of an offense the punishment of which is not prescribed by any statute of this state, to be "only by imprisonment in the county jail not more than one year, or by fine not exceeding two hundred and fifty dollars." The defendant has . been charged with and convicted of this offense at common law, and might, perhaps, have been sentenced under and by the authority of said sec. 4635. The judgment of sentence in this case appearing upon the record, according to the above holding is erroneous.

Without the aid of scarcely any decision of other courts upon the precise question here raised, but by what appears to be the most reasonable construction of the language, and by the analogies of the common law, and in consideration of the high grade and severe punishment of the crime of kidnaping, we conclude that the legislature intended that the *intent* mentioned in the section under consideration should qualify each preceding clause to which it can be made applicable, and that such intent must in all cases be alleged and proved in order to a conviction for the offense defined in said section. The question is an important one, in view of the punishment prescribed, as well as in principle, and was ably presented by the distinguished counsel on both sides; and, if the legislature intended so severe a punishment as one year's imprisonment in the state prison for simple false imprisonment, however extenuating the circumstances, such intention should have been clearly expressed, and it should be generally known by officers and others who make or aid in making arrests.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to sentence the defendant under and by virtue of section 4635 of the Revised Statutes of 1878, as having been found guilty of a crime at common law, "the punishment of which is not prescribed by any statute of this state."